IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GNC FRANCHISING, LLC,<br>    Plaintiff, | )<br>)<br>) |
| v. | )   Civil Action No. 05-1613<br>) |
| SUNIL MASSON and<br>VITAMIN CONCEPTS, INC.,<br>    Defendants. | )<br>)<br>) |

MEMORANDUM AND ORDER

This action arises out of the termination of Franchise Agreements between GNC Franchising, LLC ("GNC") and defendants, Sunil Masson and his company Vitamin Concepts, Inc. (collectively "Masson"). In a related action pending before this Court, Civil Action No. 05-1521, Masson alleged that GNC wrongfully terminated his franchises by "planting" banned products in his stores. In that case, a hearing was held on Masson's motion for a preliminary injunction. At that time, Masson alleged that a preliminary injunction was necessary because unless GNC was enjoined by this court from going forward with terminating the franchises, he would suffer severe and irreparable injury. GNC contends that the Franchise Agreements were properly terminated because Masson had on his shelves and available for sale products banned by the Food and Drug Administration. We denied Masson's motion for preliminary injunction finding that any harm suffered would not be irreparable, but could be remedied with money damages.

Following that ruling, GNC attempted to take back the stores

under the terms of the post-termination provisions of the Franchise Agreements. Masson refused GNC's entry into the stores to effectuate termination and allegedly involved local law enforcement in an effort to stop GNC from taking over control of the franchises. As a result, GNC filed this case alleging claims for breach of contract, trademark infringement, violations of the Lanham Act, and breach of the covenant not to compete.

Before the court is GNC's motion for a preliminary injunction. GNC seeks to enjoin Masson from using GNC's proprietary marks and compelling him to immediately cease operating the franchises and honor the post termination obligations set forth in the franchise agreements, including assigning the franchise properties to GNC.

Mr. Masson opposes the motion for a preliminary injunction, arguing among other things that GNC does not have the right to enter his properties to effectuate termination of the Franchise Agreements, but must first file and win eviction proceedings in New York under New York landlord tenant law in order to evict Mr. Masson from the properties. Mr. Masson further argues that plaintiffs have not shown a likelihood of success on the merits for their claims, and thus, a preliminary injunction is not warranted. For the reasons which follow, GNC's motion for a preliminary injunction will be granted in part, and denied in part.

In order to obtain a preliminary injunction under Fed.R.Civ.P. 65, plaintiff must demonstrate: (1) a reasonable likelihood of

ultimate success on the merits; (2) that irreparable harm would result if the relief is not granted; (3) that issuance of the injunctive relief would not result in greater harm to the non-moving party; and (4) that the public interest would best be served by granting the relief.

A preliminary injunction is not a matter of right. A district court's decision to issue a preliminary injunction is committed to the court's sound discretion. In this circuit, a preliminary injunction must be denied unless the moving party can demonstrate both a likelihood of success on the merits and the probability of irreparable harm if relief is not granted.

We find the Franchise Agreements at issue here to be controlling. Based on the testimony of Crystal Barnhart and Ted Grekos, which we found credible regarding the presence of banned products in Masson's stores and the termination procedures contained in the Franchise Agreements and agreed to by the parties, it appears that GNC can demonstrate a likelihood of success on the merits.[1]

The process for termination is clearly set forth in the

---

[1] As we have previously stated, whether the termination was wrongful is the basis of the underlying dispute in related Civil Action No. 05-1521. We have already determined that if, in fact, Mr. Masson can prove at trial that GNC wrongfully terminated his franchises, he can be compensated by money damages. Regardless of the outcome of Mr. Masson's lawsuit based on wrongful termination, the fact remains that GNC terminated his franchises effective November 7, 2005.

Franchise Agreements signed by the parties.  Specifically, Section XVII of the Franchise Agreements, entitled "OBLIGATIONS UPON TERMINATION," requires Mr. Masson to immediately cease operation of the franchise, cease use of the GNC System and its proprietary marks, and at GNC's option, assign to GNC any interest which Masson has in any lease or sublease for the premises of the GNC store. The Franchise Agreements further state:

> In the event Franchisee fails or refuses to comply with the requirements of [this Section], Franchisor shall have the right to enter upon the premises where Franchisee's Franchised Business was conducted, without being guilty of trespass or any other tort, for the purpose of making or causing to be made such changes as may be required at the expense of the Franchisee, which expense Franchisee agrees to pay upon demand.

Thus, upon termination, Masson was required to cease use of GNC's proprietary marks.  He has refused to do so, and instead, has continued to operate the businesses ignoring the fact that GNC has terminated the franchises.

For GNC to win its trademark infringement case at trial, it will be required to establish: (1) the marks are valid and legally protectable; (2) GNC owns the marks; and (3) the defendant's use of the marks to identify goods or services is likely to create confusion concerning the origin of the goods or services. Opticians Assoc. of America v. Independent Opticians of America, 920 F.2d 187, 192 (3d Cir. 1990).  It is clear that GNC owns the marks at issue here because the marks are federally registered.  It is also clear that the marks are valid and legally protected.

4

Finally, consumers would likely be confused concerning the source of GNC-marked products and stores operated by Masson. As such, GNC will likely prevail at the ultimate trial on the merits of its trademark claims.

Further, GNC's allegations of trademark infringement by Masson constitute irreparable injury as a matter of law. See Opticians Assoc. of America, 920 F.2d at 195. Here, Mr. Masson has refused to allow GNC to enter and operate his terminated franchises. If we do not enjoin Masson from continuing to operate the stores as GNC franchises, he will continue to commit trademark infringement by using GNC's marks, selling its products, utilizing the GNC System and techniques, and generally holding himself out to the public as a GNC store. Thus, we find that GNC has established that irreparable injury will result as to its trademark claims if injunctive relief is not granted pending trial.

Finally, in determining whether a preliminary injunction is appropriate, we must consider the extent to which the parties will suffer irreparable harm if the injunction is issued, and public interest factors. In the related case pending before the court, we determined that, although Masson will suffer economic losses from no longer operating the GNC stores, these losses are ascertainable and can be remedied by money damages if he is ultimately successful in proving that GNC wrongfully terminated his franchises.

Lastly, in trademark cases, public interest is often defined

5

as the right of the public not to be deceived or confused. This factor weighs in favor of granting GNC's request for injunctive relief so that consumers will not be confused by the concurrent use of the GNC marks by both viable GNC franchises and Masson's terminated franchises. By the same token, we find that if GNC was justified in terminating Masson's franchises, any damages resulting from Masson's continued operation of those stores can also be remedied by money damages.

As such, Masson is preliminarily enjoined from using the GNC Proprietary Marks, confidential methods, signs, advertising materials, displays, computer programs, publications, distributions, copies, items of clothing and/or any other printed or reproduced material which bear any of GNC's marks, systems and techniques associated with GNC's System in connection with the six Franchise Agreements between the parties that have been terminated by GNC.

Masson is further ordered to immediately cease operating the businesses franchised under the Franchise Agreements as GNC stores. Further, Mr. Masson is ordered to immediately turn over physical possession of the stores which GNC subleases to him. Masson is prohibited from removing any inventory, furniture, fixtures and/or equipment from those stores.

It is further ordered that Masson may remain in possession of the stores where he is the lessee and GNC is not part of the

landlord-tenant relationship. He is ordered to immediately cease operating those stores as GNC stores and is preliminarily enjoined from holding those stores out to the public as GNC stores. Masson is ordered to cooperate with GNC's immediate conversion of all GNC's fixtures, equipment, signage, publications, advertising materials, computer programs, displays, product, and any other materials bearing GNC's marks from those stores. GNC shall bear the cost of this effort.

The court will not grant GNC's request through a preliminary injunction to enforce the covenants not to compete contained within the Franchise Agreements at this time. Any damages sustained by GNC as the result of competition by the non-GNC stores which Masson retains per this court order, can be compensated by money damages. As such, GNC will not suffer irreparable harm by letting Masson operate non-GNC stores at those locations where he is the lessee.

Therefore, this 5th day of December, 2005, IT IS HEREBY ORDERED that plaintiff's motion for preliminary injunction [doc. no. 3] is GRANTED in part, and DENIED in part, consistent with this opinion.

BY THE COURT:

_____, J.

cc: All Counsel of Record